UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHELLE IRIZARRY; VALERIE
WILLIAMS; JOANNE NIXON; JOANN
ROBINSON; and BRANDON LITT,

        Plaintiffs,

v.                                                   Case No. 6:19-cv-268-Orl-37EJK

ORLANDO UTILITIES COMMISSION;
LENNAR CORPORATION; U.S HOME
CORPORATION; AVALON PARK
GROUP MANAGEMENT, INC.; BEAT
KAHLI; LENNAR HOMES LLC;
BORAL RESOURCES LLC; and
PREFERRED MATERIALS, INC.,

        Defendants.

## ORDER

Before the Court are two motions to dismiss filed by Defendants Lennar Corporation, Lennar Homes, LLC and U.S. Home Corporation (Doc. 50), and Avalon Park Group Management, Inc. and Beat Kahli (collectively, "**Movants**") (Doc. 49). Plaintiffs oppose. (Docs. 58, 59.) On review, the motions to dismiss are due to be granted in part and denied in part.

### I. BACKGROUND

This case is a putative class action brought by residents who live near a power plant and claim its coal operations contaminate their property. (Doc. 43, ¶ 1.) Plaintiffs seek to represent a "Class Area" where contaminants from the "Stanton Power Plant"

-1-

have been disseminated and discharged through various ways, including in concrete and other construction materials used to develop homes and communities in the Class Area, transporting fly ash, and batching concrete containing contaminated fly ash at a concrete manufacturing plant. (*Id.* ¶ 2.) Relevant here, Plaintiffs sue the developers and managers of the residential communities within the Class Area for strict liability under Florida Statute § 376.313: Defendants Lennar Corporation, Lennar Homes, LLC, and U.S. Home Corporation (collectively, "**Lennar**"); and Avalon Park Group Management, Inc. ("**Avalon**") and its principal, Beat Kahli. (*Id.* ¶¶ 312–43.)

Lennar moves to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and moves to compel arbitration of Plaintiff Brandon Litt's claims against it. (Doc. 50 ("**Lennar MTD**").) Avalon and Mr. Kahli move for dismissal under Rule 12(b)(6). (Doc. 49 ("**Avalon MTD**").) In response, Mr. Litt voluntarily dismissed his claims against Lennar without prejudice (Docs. 57, 79), and Plaintiffs responded (Docs. 58, 59). Briefing complete, the MTDs are ripe.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Rule 12(b)(1) attacks on subject matter jurisdiction may be facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). For facial attacks, a court accepts the complaint's allegations as true. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys. Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Factual attacks, in contrast, allow a court "to consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael*, 572 F.3d at 1279. Factual attacks place the burden on the plaintiff

to show that jurisdiction exists. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

Article III, Section 2 of the United States Constitution limits federal courts' jurisdiction to actual cases and controversies. Standing is a part of this limitation, as a "threshold jurisdictional question" that must be resolved before a court can turn to a claim's merits. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). Courts determine standing at the time of filing. *Id.* at 976 (citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003)).

### B. Rule 12(b)(6)

Under the minimum pleading requirements of the Federal Rules of Civil Procedure, plaintiffs must provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts. *See* Fed. R. Civ. P. 8(a), 8(d), & 10(b). If a complaint does not comport with these minimum pleading requirements, if it is plainly barred, or if it otherwise fails to set forth a plausible claim, then it may be dismissed under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Plausible claims must be founded on sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 679. In assessing the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See id.*; *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012);

-3-

*Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1271 (M.D. Fla. 2016). Courts do not consider other matters outside the four corners of the complaint, and they must: (1) disregard conclusory allegations, bald legal assertions, and formulaic recitation of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiff. *See Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir. 2016);[1] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

### III. DISCUSSION

The Court first discusses Lennar's 12(b)(1) argument that Plaintiffs lack standing. (Doc. 50, pp. 3–5.) The Court then turns to both 12(b)(6) MTDs, addressing overlapping arguments together.

#### A. 12(b)(1) Article III Standing

Lennar challenges Plaintiffs' standing to sue them, specifically that Plaintiffs' purported injuries are fairly traceable to Lennar's conduct.[2] (Doc. 50, pp. 3–5.) Lennar argues that no individual Plaintiff has alleged how Lennar's conduct injured them personally, and instead Plaintiffs rely on generalized allegations that Lennar's conduct resulted in contamination of the Class Area. (*Id.*) Such fails to confer standing on Plaintiffs, according to Lennar. (*Id.* at 4–5.) In turn, Plaintiffs state that "general factual allegations of injury resulting from the defendant's conduct may be sufficient to show

---

[1] The Court construes Lennar's 12(b)(1) motion as a facial attack on standing, as Lennar relies exclusively on the Amended Complaint to challenge Plaintiffs' standing. (Doc. 50, pp. 3–5.)

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007)
-4-

standing," which by Lennar's own admission, they've met. (Doc. 59, pp. 4–5 (quoting *Bischoff v. Osceola Cty.*, 222 F.3d 874, 878 (11th Cir. 2000)).) Further, Plaintiffs point out that their allegations must be accepted as true at the motion to dismiss stage (*id.*), so because they've alleged that Lennar engaged in activities constituting a "discharge of pollution" in their neighborhoods and resulting damages (Doc. 43, ¶¶ 312–35), standing is met. (*See* Doc. 59, p. 5.)

To establish standing, a plaintiff must allege: (1) injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). For the first element, injury-in-fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* For the second, "the injury has to be fairly traceable to the challenge action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* And for redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561.

At the motion to dismiss stage, the Court evaluates standing "based exclusively on [the] plaintiff's pleadings." *Bischoff*, 222 F.3d at 878 (quoting *Haase v. Sessions*, 835 F.2d 902, 904 (D.C. Cir. 1987)). Here, the Amended Complaint alleges that Lennar, as a developer, builder, or marketer of the Stoneybrook, Storey Park, and Moss Park neighborhoods—where Plaintiffs reside—engaged in activities that constituted a discharge of pollution and resulted in "conditions of pollutions." (Doc. 43, ¶¶ 21–25, 313, 315, 321–24, 329–35.) Plaintiffs allege damages because of the "conditions of pollutions"

on their land that cannot solely be attributed to the Stanton Power Plant's operator, Orlando Utilities Commission ("**OUC**"), "because Lennar developed, built, and marketed homes despite the existence of the [c]ontaminants and did not take adequate steps to prevent homes from being exposed to the [c]ontaminants." (*Id.* ¶¶ 317–19, 325–27, 331–33.)

With these allegations, the Court finds that Plaintiffs have met their burden of establishing standing at this stage. As to injury-in-fact, although not challenged by Lennar, the Court finds this element met based on the Amended Complaint's allegations of exposure to contaminants in Plaintiffs' homes and on their property. (*Id.* ¶¶ 312–35.) This injury is personal to Plaintiffs, who reside in homes allegedly built with contaminants. (*Id.* ¶¶ 21–25, 312–35); *cf. Warth v. Seldlin*, 422 U.S. 490, 502 (1975) ("[Plaintiffs] must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represents.").

On causation, the Amended Complaint alleges that Lennar's construction-related activities constituted a discharge of pollution that resulted in a condition of pollution in Plaintiffs' neighborhoods. (Doc. 43, ¶¶ 312–35.) These activities are: grading and spreading fill and dust; transporting or contracting for the transportation of, dirt, fill, and constructional materials containing contaminants from the Stanton Power Plant for developing the communities and building homes; and collaborating with developers and building contractors. (*Id.* ¶¶ 316, 324, 332.) So Plaintiffs attribute harm to Lennar based on its role developing and constructing Plaintiffs' homes—which differs from the injuries

-6-

Plaintiffs ascribe to OUC and the other Defendants (*id.* ¶¶ 267–311, 336–66). And because Plaintiffs live in the affected area and allege damages resulting from the conditions of pollution on their land, the Court finds Plaintiffs' alleged injury fairly traceable to Lennar's conduct.

Last, for redressability, the Amended Complaint contends Lennar is strictly liable and seeks damages under Florida Statutes §§ 376.30–376.319 resulting from the "conditions of pollution" on their land. (*Id.* ¶¶ 318–19, 326–27, 334–35.) "Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Hollywood Mobile Estates Ltd v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011) (quoting *Mulhali v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010)). Should Plaintiffs prevail against Lennar, the Court finds that Plaintiffs' requested relief redresses the injury suffered. This element is met.

Altogether, the Court finds that Plaintiffs have sufficiently established standing to sue Lennar at this stage of proceedings. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014); *Jerue v. Drummond Co., Inc.*, No. 8:17-cv-587-T-AEP, 2017 WL 10876737, at *4 (M.D. Fla. Aug. 17, 2017). Lennar's 12(b)(1) motion is denied.

B.      **12(b)(6)**

The Court now takes up the 12(b)(6) arguments, starting with whether Plaintiffs can pursue their Section 376.313 claims against Movants based on construction-related

activities and their roles as builders, developers, and marketers of homes.[3] (Doc. 49, pp. 8–12; Doc. 50, pp. 6–16.)

Section 376.313 is part of Florida Statutes 376.030–376.319, originally enacted as part of the Water Quality Assurance Act of 1983 ("**WQAA**"). *Aramark Uniform & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 22 (Fla. 2004). It "allows private parties to sue for damages 'resulting from a discharge or other condition of pollution covered by ss. 376.30–376.319.'" *Id.* (quoting Fla. Stat. § 376.313(3)). To state a plausible claim under Fla. Stat. § 376.313(3), a plaintiff must allege: (1) a prohibited discharge or other pollutive condition occurred; and (2) damages. *Clark v. Ashland, Inc.*, No. 2:13-cv-794-FtM-29DNF, 2015 WL 1470657, at *3 (M.D. Fla. Mar. 31, 2015) (citing *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1221–22 (Fla. 2010)). It allows for joint and several liability and does not require proof of causation or "duty" to prevent the discharge or pollutive condition.[4] § 376.313(3); *Curd*, 39 So. 3d at 1221–22. A person "need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred." § 376.313(3). Here, Movants argue that Plaintiffs haven't plausibly alleged a discharge.[5] (Doc. 50, pp. 7–14; Doc. 49, pp. 8–12.)

---

[3] Lennar's argument that the Amended Complaint constitutes a shotgun pleading is unavailing, as the Amended Complaint clearly delineates which actor is allegedly responsible for what. (Doc. 50, pp. 5–6.)

[4] The Court need not reach the issue of whether Section 376.313(3) requires a plaintiff to allege a violation of a Florida Department of Environmental Protection standard because the Amended Complaint alleges that the concentration of contaminants within the class area exceeds federal and state regulatory standards. (Doc. 43, ¶¶ 69–76.)

[5] Movants don't address Plaintiffs' claim that they created a "condition of pollution"; nevertheless, the Court finds Plaintiffs allegations adequate to survive the motion to dismiss stage.

The WQAA defines discharge "broadly to include 'any spilling, leaking, seeping, pouring, misapplying, emitting, emptying, releasing, or dumping of any pollutant or hazardous substance which occurs and which affects lands and the surface and ground waters of the state." *Jerue*, 2017 WL 10876737, at *8–9 (citing Fla. Stat. § 376.301(13)) (emphasis omitted). Plaintiffs claim Movants' activities excavating and grading land, which "'releases,' disperses, and disseminates pollutants," constitutes a discharge, as does "misapplying" contaminants by "constructing homes using concrete made from contaminated coal ash." (Docs. 59, pp. 6–12; 58, pp. 4–10.) At this stage, the Court finds Plaintiffs' claims that Movants' development and construction-related activities in the Class Area come within the purview of "prohibited discharge" under the WQAA. *Cf. Jerue*, 2017 WL 10876737, at *8–9 (finding the plaintiffs adequately alleged a § 376.313 claim based on residential development on reclaimed land where discharge of phosphatic slag material in soil occurred); *Jerue v. Drummond Co., Inc.*, No. 8:17-cv-587-EAK-AEP, 2018 WL 7461683, at *6–11 (same). Notably, the WQAA comes with a "'statutory directive that section 376.313(3) should be liberally construed,'" and was enacted as a "far-reaching statutory scheme aimed at remedying, preventing, and removing the discharge of pollutants from Florida's waters and lands." *Curd*, 39 So. 3d at 1222 (quoting *Aramark*, 894 So. 2d at 26). That in mind, the Court finds that disseminating, spreading, grading, excavating, and causing further spread of contamination, as Plaintiffs allege, is actionable under Section 376.313, despite Movants' status as second order actors. So this dismissal argument is rejected.

Next up is Movants' argument they are not "persons" who can be held liable under

the WQAA because they did not discharge pollutants or create a condition of pollution. (Doc. 49, pp. 12–14, Doc. 50, p. 16 n.8.) This argument dovetails with Movants' contention that their construction and development-related activities are outside the scope of § 376.313(3), which the Court just rejected. Plaintiffs alleged that Movants' conduct contributed and amplified the release of contaminants in the Class Area, and the Court finds this enough to pass muster at the motion to dismiss stage.

Movants then contend Plaintiffs claims are barred by the third-party defense under Section 376.308(2)(d). (Doc. 49, pp. 14–16; Doc. 50, pp. 20–21.) This defense allows a person who caused a discharge or other polluting condition to escape liability if they:

> plead and prove that the occurrence was solely the result of . . . [a]n act or omission of a third party . . . and the defendant establishes by a preponderance of the evidence that: 1. The defendant exercised due care with respect to the pollutant concerned, taking into consideration the characteristics of such pollutant, in light of all relevant facts and circumstances. 2. The defendant took precautions against any foreseeable acts or omissions of any such third party and against the consequences that could foreseeably result from such acts or omissions.

Fla. Stat. § 376.308(2)(d). As this language makes plain, to have the defense, a defendant must "plead and prove" its applicability. So whether Movants' conduct is saved by the third-party defense simply cannot be resolved at the pleadings stage. Recall that § 376.313(3) allows for joint and several liability, and Plaintiffs' alleged that Movants' developed and constructed the Class Area "without addressing the risks and harms posed by the [c]ontaminants" and "spread contaminated ash-laden soil and caused the further airborne dispersion and deposition of contaminated coal ash and construction materials containing contaminated coal ash through their construction activities." (Doc.

43, ¶ 7.) These allegations, taken as true at the pleadings stage, bar the wholesale applicability of the third-party defense to Movants. This argument therefore fails.

Moving on, Mr. Kahli contends that he cannot be held personally liable as the CEO of Avalon Park Group because the corporate form shields him from personal liability. (Doc. 49, pp. 16–18.) Yet the Amended Complaint propounds that Mr. Kahli's conduct marketing, developing, and financing the Avalon Park community was "on his behalf as well as on behalf of Defendant Avalon Park Group." (Doc. 43, ¶¶ 135–42.) Taking this as true, as the Court must at this stage, Plaintiffs have adequately stated a § 376.313(3) claim against Mr. Kahli, individually.

Last, Movants posit that Plaintiffs cannot seek equitable relief for their Section 376.313(3) claims because that section only provides for damages. (Doc. 50, pp. 19–20; Doc. 49, pp. 20–23.) In turn, Plaintiffs say limiting their remedies to monetary damages runs contrary to the WQAA's purposes and familiar principles of statutory construction. (Doc. 58, pp. 16–19; Doc. 59, pp. 17–19.) On this point, the Court agrees with Movants.

Section 376.313(3) provides a "cause of action . . . for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30–376.317." This cause of action springs from Sections 376.30–376.317 of the WQAA—sections that outline a comprehensive administrative procedure for Florida's Department of Environmental Protection ("**DEP**") to clean up contaminated sites. *See* Fla. Stat. §§ 376.30–376.317. As the Florida Supreme Court put it:

> Section 376.308 authorizes the DEP to sue polluters and force the cleanup of contaminated sites. Section 376.313, entitled "Nonexclusiveness of remedies and individual cause of action under ss. 376.30–376.319," allows

> private parties to sue for damages "resulting from a discharge or other condition of pollution covered by ss. 376.30–376.319."

*Aramark*, 894 So. 2d at 22 (previous version of statute). So the private cause of action Section 376.313 creates provides an additional type of remedy—damages—for individuals harmed and must be read within this statutory context. *See* § 376.313(1) ("The remedies in ss. 376.30–376.317 shall be deemed to be cumulative and not exclusive.").

Now, § 376.313 is not a common law cause of action. *Aramark*, 894 So. 2d at 25. This means a plaintiff may also pursue common law causes of action to obtain common law types of relief, i.e., injunctive relief. *See Courtney Enters., Inc. v. Publix Super Mkts., Inc.*, 788 So. 2d 1045, 1048–50 (Fla. 2d DCA 2001) (Section 376.313 preserves common law causes of action); *St. Angelo v. Healthcare & Ret. Corp. of Am.*, 824 So. 2d 997, 999 (Fla. 4th DCA 2002) (citing *Courtney*, 788 So. 2d at 1049 for proposition that a "cumulative remedies" clause "usually does not supersede other common law remedies"); *see also Aramark*, 894 So. 2d at 25 (citing *St. Angelo*, 824 So. 2d at 999). On its own terms, however, the "damages" Section 376.313 allows a person to collect does not encompass equitable relief. *Italiano v. Jones Chems., Inc.*, No. 95-1161-CIV-T-17A, 1997 WL 118426, at *3 (M.D. Fla. Feb. 21, 1997) (granting motion to dismiss where the plaintiffs sought injunctive relief on both their Chapter 376 count and common law causes of action because "injunctive relief is an available remedy where a claimant seeks to enforce a common law right involving pollution," allowing the plaintiffs to amend "to appropriately request injunctive relief with respect to the remaining common law causes of action"). To get there requires another cause of action—which is what happened in the case Plaintiffs cite. *See Boardman*

*Petroleum, Inc. v. Tropic Tint of Jupiter, Inc.*, 668 So. 2d 308, 309 (Fla. 4th DCA 1996) (after the plaintiffs prevailed on Chapter 376 claim and common law negligence claim based on petroleum storage tank leak and contamination, court ordered injunctive relief). Were Section 376.313 claims to encompass injunctive relief of the sort covered by Sections 376.30–376.317 a case seeking "damages for the loss of use and decrease in property value caused by the contaminants" morphs into "the general enforcement of the state's pollution laws," which is tasked to DEP. *Sher v. Raytheon Co.*, Case No. 8:08-cv-889-T-TGW, 2008 WL 2756570, at *3 (M.D. Fla. July 14, 2008). With that, the Court concludes that Plaintiffs cannot pursue equitable relief based on their Section 376.313 claims.

In sum, Plaintiffs have stated plausible claims under Section 376.313 against Movants, but Plaintiffs' request for equitable relief is improper. The Court grants in part and denies in part the MTDs.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Avalon Park Group and Beat Kahli's Dispositive Motion to Dismiss Amended Class Action Complaint and Incorporated Memorandum of Law (Doc. 49) is **GRANTED IN PART** to the extent Plaintiffs' request for equitable relief is dismissed. In all other respects, the Motion is denied.

2. Defendants Lennar Corporation, Lennar Homes, LLC and U.S. Home Corporation's Dispositive Motion to Dismiss and Incorporated Memorandum of Law (Doc. 50) is **GRANTED IN PART** to the extent

Plaintiffs' request for equitable relief is dismissed. In all other respects, the Motion is denied.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 8, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record