UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHELLE IRIZARRY; VALERIE
WILLIAMS; JOANNE NIXON; JOANN
ROBINSON; and BRANDON LITT,

    Plaintiffs,

v.                                                  Case No. 6:19-cv-268-Orl-37EJK

ORLANDO UTILITIES COMMISSION;
LENNAR CORPORATION; U.S. HOME
CORPORATION; AVALON PARK
GROUP MANAGEMENT, INC.; BEAT
KAHLI; and BORAL RESOURCES, LLC,

    Defendants.

## ORDER

Plaintiffs sued Defendant Orlando Utilities Commission ("**OUC**") for strict liability under Florida Statute § 376.313 of the Water Quality Assurance Act ("**WQAA**") (Doc. 43, ¶¶ 267–306 ("**Count I**")), and inverse condemnation (*id.* ¶¶ 307–11 ("**Count II**")). OUC moves for partial judgment on the pleadings as to Count I. (Doc. 89 ("**Motion**").) Plaintiffs oppose. (Doc. 91.) On review, the Motion is denied.

    **I.**    **BACKGROUND**[1]

Established in 1923, OUC is a public utility commission that provides water and electric service to Orlando citizens. (Doc. 43, ¶¶ 26, 27, 53.) OUC owns and operates the

---

[1] The facts recited in this section may not be the "actual" facts of the case but, at this stage, are taken as true from Plaintiffs' amended complaint (Doc. 43). *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted).

1

Curtis H. Stanton Energy Center ("**Stanton Power Plant**") in Orlando, Florida. (*Id.* ¶¶ 1, 54.) The Stanton Power Plant has two coal-burning facilities, built on the recommendation of OUC's engineering consultants to accommodate Orlando's rapid growth. (*Id.* ¶¶ 55–61.) OUC is responsible for the storage, handling, transportation, and disposition of coal from the Stanton Power Plant, which "disposes of more coal combustion waste using an on-site surface impoundment than any other coal-fired electrical facility in the United States." (*Id.* ¶¶ 62, 93.) The Stanton Power Plant's coal ash, containing radioactive materials, is dumped into uncovered piles and has been blowing through Plaintiffs' neighborhoods, contaminating them. (*Id.* ¶¶ 64–66, 81, 86–88.)

Plaintiffs sued OUC in state court, alleging strict liability under the WQAA for polluting their properties with coal ash. (*Id.* ¶¶ 3, 267–306; *see also* Doc. 1-1.) OUC removed the case here under the Price Anderson Act ("**PAA**") (Doc. 1) and now moves for partial judgment on the pleadings on Count I, asserting sovereign immunity (Doc. 89). After briefing and a hearing, the matter is ripe. (*See* Docs. 89, 91, 95, 99, 103, 126, 130.)

## II.   LEGAL STANDARDS

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The Court accepts as true all material facts alleged in the non-moving party's pleading and views those facts in the light most favorable to the non-moving party. *See Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Judgment on the pleadings is appropriate when, considering the substance of the pleadings and judicially noticed facts, no material facts are in dispute and the movant is entitled to judgment as a

matter of law. *Hawthorne*, 140 F.3d at 1370.

### III. ANALYSIS

OUC, a municipal agency,[2] argues it enjoys sovereign immunity under the common law for WQAA claims. (Docs. 89, 95, 126.) Plaintiffs counter OUC doesn't enjoy sovereign immunity and if it does, the WQAA waives it. (Docs. 91, 99, 130.) First, let's review Florida's history of municipal sovereign immunity and whether OUC enjoys sovereign immunity, before turning to waiver under the WQAA.[3]

#### A. Sovereign Immunity

##### 1. Florida Municipal Sovereign Immunity

Sovereign immunity "provides that a sovereign cannot be sued without its own permission." *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471 (Fla. 2005). Sovereign immunity's origin traces back to English common law, on the principle that "the King can do no wrong." *Id.* Florida adopted the English common law. *Id.* (citing Fla. Stat. § 2.01).

---

[2] Throughout its briefing OUC calls itself many things—a public entity, a state entity, and a municipal agency. (Doc. 89, p. 2; Doc. 95, p. 2; Doc. 126, p. 8.) In its latest briefing, OUC says it's "a state entity—more specifically, it is a 'municipal agency.'" (Doc. 126, p. 8.) As an independent utility commission created by the Florida Legislature to operate city utilities, OUC is a municipal agency. *See Hodge v. Orlando Utilities Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 4042930, at *7–8 (M.D. Fla. Nov. 23, 2009).

[3] As this action was removed under the PAA (Doc. 1), the parties briefed whether the Court should apply federal or state sovereign immunity law. (Doc. 91, pp. 19–21; Doc. 95, pp. 8–10; Doc. 126, pp. 9–10; Doc. 130, p. 8.) The PAA applies state law for "substantive rules for decision." 42 U.S.C. § 2014(hh). Sovereign immunity is substantive. *See Fluid Dynamics Holdings, LLC v. City of Jacksonville*, 752 F. App'x 924, 925 n.1 (11th Cir. 2018). So the Court applies state law here.

3

"Prior to 1776, the common law doctrine of sovereign immunity applied without distinction between governmental entities." *Cauley v. City of Jacksonville*, 403 So. 2d 379, 381 (Fla. 1981). But beginning in 1850, Florida has distinguished municipalities from other governmental entities. *Id.* at 382. Municipalities are "in part, a public agency of the state" but because they're organized "for the local advantage and convenience of the people in the particular locality" they are in part operating for a "quasi private (as distinguished from public) corporate advantage." *Keggin v. Hillsborough Cty.*, 71 Fla. 356, 361–62 (Fla. 1916) (quotation marks and citation omitted); *Kaufman v. City of Tallahassee*, 84 Fla. 634, 639 (Fla. 1922) ("[A] city is merely a large quasi public corporation whose activities partake more of the nature of a business than a government." (citation omitted)). Florida agreed with other states that municipalities should not enjoy sovereign immunity when acting as private corporations. *Cauley*, 403 So. 2d at 382. Over the years, Florida developed an ever-shifting kaleidoscope of case law to determine when a municipality was liable in tort. *See, e.g.*, *Hargrove v. Town of Cocoa Beach*, 96 So. 2d 130, 133–34 (Fla. 1957); *Modlin v. City of Miami Beach*, 201 So. 2d 70, 73 (Fla. 1967); *Dep't of Transp. v. Neilson*, 419 So. 2d 1071, 1076–78 (Fla. 1982); *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 917–19 (Fla. 1985).

In 1973, Florida enacted § 768.28, providing a limited waiver of sovereign immunity for tort claims. *Am. Home. Assurance Co.*, 908 So. 2d at 472. Before § 768.28, the state and counties enjoyed immunity from tort liability, while municipalities were liable for their proprietary functions. *Id.* So the state and municipalities "arrived at section 768.28 from opposite directions: the state from a status of near-total immunity;

4

and municipalities from a status of near-nonexistent immunity." *Id.* at 478 (Cantero, J., concurring). Section 768.28 put them on the same level for tort actions, hoping to bring equipoise to the process of determining municipal liability for tortious conduct. *See Cauley*, 403 So. 2d at 384. Section 768.28 has no application to claims arising outside the context of fault-based liability, so a municipality's sovereign immunity in the area of statutory liability is assessed from a pre-§ 768.28 perspective. *See Am. Home Assurance Co.*, 908 So. 2d at 474–75 (finding a municipal agency did not enjoy sovereign immunity because § 768.28 did not apply to contracts and municipalities could historically execute contracts). With this background in mind, let's turn to this case.

### 2. OUC's Sovereign Immunity

What immunity does OUC enjoy here as a municipal agency being sued under the WQAA for its coal disposal at the Stanton Power Plant? Plaintiffs' claim is founded in § 376.313 of Florida Statutes 376.030-376.319, originally enacted as part of the WQAA. *Aramark Unif. & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 22 (Fla. 2004). "It allows private parties to sue for damages resulting from a discharge or other condition of pollution covered by §§ 376.30–376.319." *Irizarry v. Orlando Utilities Comm'n*, 393 F. Supp. 3d 1110, 1116 (M.D. Fla. 2019) (quotation marks and citations omitted).

Since this action is founded on statutory liability, rather than tort, § 768.28 doesn't apply. *See Am. Home Assurance Co.*, 908 So. 2d at 474. And liability is imposed based on strict liability, without regard to fault. *See* Fla. Stat. § 376.313. In its supplemental briefing, OUC says municipal agencies enjoy sovereign immunity from all actions that do not

involve a constitutional question, unless waived, pointing to cases where courts discuss waiver and contracts cases.[4] (Doc. 126, pp. 1–6.) Plaintiffs say municipal agencies enjoy sovereign immunity only when granted by statute or they engage in nonoperational discretionary acts. (Doc. 130, p. 7.) Neither is entirely correct.

While municipalities do enjoy sovereign immunity in limited circumstances, *see Cauley*, 403 So. 3d at 382, historically, the question turned on whether the function was proprietary or governmental in nature. *See Daly v. Stokell*, 63 So. 2d 644, 645 (Fla. 1953).

> We understand the test of a proprietory power to be determined by whether or not the agents of the city act and contract for the benefit and welfare of its people; any contract, in other words, that redounds to the public or individual advantage and welfare of the city or its people is proprietory, while a governmental function, as the term implies, has to do with the administration of some phase of government, that is to say, dispensing or exercising some element of sovereignty. There is no precise dividing line between the two functions; they may sometime be difficult of distinction and may tend to overlap.

*Id.* (citations omitted).

But OUC's cited cases don't address the origin or bases of municipalities' sovereign immunity, only the issue of waiver. *See, e.g.*, *Royal World Metro., Inc. v. City of Miami Beach*, 863 So. 2d 320 (Fla. 3d DCA 2003); *Longman v. City of Tallahassee*, 776 So. 2d 1130 (Fla. 1st DCA 2001). OUC also argues municipalities have sovereign immunity in

---

[4] OUC also argues the current Florida Constitution, ratified in 1968, placed all local government entities on the same level as the state. (Doc. 126, pp. 7–8 (citing art. VIII, § 2, Fla. Const.).) But as Plaintiffs point out, § 768.28 equalized municipalities with the state for tort liability. (Doc. 130, pp. 6–7); *see Am. Home. Assurance Co.*, 908 So. 2d at 472. Section 768.28 was enacted five years after the Florida Constitution was ratified so the Florida Constitution did not place municipalities in parity with the state for sovereign immunity. *See Am. Home. Assurance Co.*, 908 So. 2d at 472; *Cauley*, 403 So. 2d at 385.

6

the contracts-context, but this immunity is waived upon the execution of an express contract citing *City of Largo v. AHF-Bay Fund, LLC*, 215 So. 3d 10, 17 (Fla. 2017). (*See* Doc. 126, p. 3.) This waiver argument is misplaced. A municipality exercises its historical power when it enters into a contract; it has nothing to do with waiver. *See Am. Home Assurance Co.*, 908 So. 2d at 474–76. Conflation of the issue of *waiver* with the *existence* of immunity, vel non, obscures the issue "like the cuttlefish who obscures himself in his own ink when he feels himself about to be grasped."[5] Plaintiffs' arguments are equally inapt. They ask the Court to apply an operational-discretionary distinction, where municipalities are liable for their operational functions. (Doc. 130, p. 3.) But this distinction was explicitly founded in § 768.28 and doesn't apply here. *See Commercial Carrier Corp. v. Indian River Cty.*, 371 So. 2d 1010, 1016–22 (Fla. 1979).

Rather than rely on inferences from waiver cases or look to cases sounding in tort under § 768.28, most illuminating are those cases discussing municipal sovereign immunity outside the context of § 768.28. Florida has a long history of treating municipalities differently than the state when they act like corporations. *See supra* Section III.A.1. When government entities enter "areas historically left to the private sector, . . . the use of sovereign immunity is much less justifiable. In many instances it is unjust and counterproductive."[6] Is OUC "dispensing or exercising some element of sovereignty" by operating a coal fired power plant or is that activity more akin to that which "redounds

---

[5] Charles B. Schmitt, *Aristotle as a Cuttlefish: the Origin and Development of a Renaissance Image*, Studies in the Renaissance, Vol. 12, p. 60 (1965).
[6] John B. Ostrow & Joseph H. Lowe, *Sovereign Immunity*, 33 U. Miami L. Rev. 1297, 1298 (1979).

7

to the public or individual advantage and welfare of the city or its people"? *See Daly*, 63 So. 2d at 645.

Liability has long been imposed upon municipalities and their agencies for their corporate functions. *See Am. Home Assurance Co.*, 908 So. 2d at 472; *Sebring Utilities Comm'n v. Sicher*, 509 So. 2d 968, 970 (Fla. 2d DCA 1987) (explaining an "electric authority operated by a city" would not be protected by sovereign immunity prior to the adoption of § 768.28). Operating a power plant and providing electricity is a corporate, proprietary function. *See Keggin*, 71 Fla. at 360–61; *Griffin v. City of Quincy*, 410 So. 2d 170, 173 (Fla. 1st DCA 1982) (explaining the "operation of an electrical system is not a traditional 'governmental' function"). Nothing about this essentially commercial operation involves the dispensation or exercise of any element of sovereignty. So OUC's operation of the Stanton Power Plant is not entitled to immunity in this statutory action.

### B. WQAA Waiver

Even if OUC enjoys sovereign immunity, the WQAA waives it. The Florida Legislature "can abrogate the state's sovereign immunity." *Am. Home Assurance Co.*, 908 So. 2d at 471 (citing art. X, § 13, Fla. Const.). Any waiver of sovereign immunity must be clear and unequivocal. *Id.* at 472. (citations omitted).

The Florida Legislature provided that the WQAA, "being necessary for the general welfare and the public health and safety of the state and its inhabitants, shall be liberally construed to effect the purposes [of the WQAA]." Fla. Stat. § 376.315. The purpose of the WQAA is the preservation of Florida's land and water. Fla. Stat. §§ 376.30(1)(a), (b).

Section 376.313 of the WQAA creates a private cause of action for any person damaged by pollution. *Aramark Unif. & Career Apparel, Inc.*, 894 So. 2d at 23. Section 376.313 is titled "Nonexclusiveness of remedies and individual cause of action for damages under §§ 376.30-376.317" and states:

> Except as provided in § 376.3078(3) and (11), nothing contained in §§ 376.30-376.317 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by §§ 376.30-376.317 and which was not authorized pursuant to chapter 403.

Fla. Stat. § 376.313(3). And "[t]he only defenses to such cause of action shall be those specified in § 376.308." *Id.*

Two parts of the WQAA collectively show a clear waiver of sovereign immunity for a private cause of action:

> "Person" means any individual, partner, joint venture, or corporation; any group of the foregoing, organized or united for a business purpose; or any governmental entity. (Fla. Stat. § 376.301(29) ("**Person Provision**").)

> An act of government, either state, federal, or local, unless the person claiming the defense is a governmental body, in which case the defense is available only by acts of other governmental bodies (Fla. Stat. § 376.308(2)(b) ("**Defense Provision**").)

OUC says the Person Provision doesn't waive sovereign immunity because § 376.313 doesn't have an application provision identifying that "persons" can be sued and the Person Provision may only reflect that governmental entities can be sued by the Florida Department of Environmental Protection ("**FDEP**").[7] (Doc. 89, pp. 7–8, 14, 18.)

---

[7] OUC compares the WQAA to the federal Comprehensive Environmental Response, Compensation, and Liability Act ("**CERCLA**"), before the Superfund Amendments and Reauthorization Act of 1986 ("**SARA**"), which OUC argues did not

First, § 376.313 has an application provision—it applies to pollution covered under §§ 376.30 to 376.317, which include pollution caused by governmental entities. *See, e.g.*, Fla. Stat. § 376.30(2)(b) (preventing discharges by governmental entities is a purpose of the WQAA); Fla. Stat. §§ 376.301(29), 376.305(1) (requiring abatement by "[a]ny person discharging a pollutant" and person includes governmental entity). Second, reading the Person Provision to apply only for enforcement actions by FDEP is inconsistent with the Defense Provision.

While it is certainly true that the waiver of sovereign immunity must be clearly expressed, that expression can be by made by clear implication.[8] The Defense Provision identifies a defense available only to governmental entities. Fla. Stat. § 376.308(2)(b). The Florida Supreme Court held § 376.308, which includes the Defense Provision, applies to private causes of action under § 376.313. *See Aramark Unif. & Career Apparel, Inc.*, 894 So. 2d at 24–25. As the Defense Provision applies to § 376.313, the clear implication is that private parties must be able to sue governmental entities.[9] This interpretation comports with the Florida Legislature's mandate to construe the WQAA liberally to effect its

---

waive sovereign immunity. (Doc. 89, pp. 8–13.) But this comparison isn't helpful because the Supreme Court only assessed post-SARA CERCLA, so it didn't determine whether the language in pre-SARA CERCLA was sufficient to waive sovereign immunity. *See Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 5, 13 (1989).

[8] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 282 (2012) ("To be sure, the sovereign's consent to suit must be clear, but there is such a thing as utterly clear implication.").

[9] Judge Chappell, in *Miller v. City of Ft. Myers*, found that § 376.313 did not waive sovereign immunity, but Judge Chappell did not have the benefit of briefing on the Defense Provision. No. 2:18-cv-195-FtM-38UAM (M.D. Fla. Apr. 1, 2019) (Doc. 61, pp. 20–23). The Defense Provision is critical to the waiver analysis.

purpose to protect Florida's land and waters. Fla. Stat. §§ 376.30(1)(a), (b), 376.315; *see also Aramark Unif. & Career Apparel, Inc.*, 894 So. 2d at 23. It is also consistent with a recognition that the extension or expansion of sovereign immunity to an independent municipal agency involved in the operation of a large commercial coal fired power plant enlarges the archaic legal concept that "the King can do no wrong" well beyond any rational public policy goal.

OUC does not enjoy sovereign immunity here, but even if it did, the Person and Defense Provisions of the WQAA, waive it.

### IV.   CONCLUSION

It is **ORDERED AND ADJUDGED** that Defendant Orlando Utilities Commission's Motion for Partial Judgment on the Pleadings (Doc. 89) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 23, 2020.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record